IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GRACE WILSON,                    )
              Plaintiff,         )
                                 )
        vs.                      )        Civil Action No. 05-511
                                 )        Judge Joy Flowers Conti
KUHN'S QUALITY FOODS,            )        Magistrate Judge Robert C. Mitchell
              Defendant.         )


REPORT AND RECOMMENDATION

I.     Recommendation

       It is respectfully recommended that the motion for summary judgment submitted on

behalf of the plaintiff (Docket No. 14) be denied.

II.    Report

       Plaintiff, Grace Wilson, brings this action against Defendant, Kuhn's Quality Foods

("Kuhn's"), asserting claims under the Age Discrimination in Employment Act, 29 U.S.C.

§§ 621-34 (ADEA), the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-54 (FMLA),

and the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 (ADA), arising out of

Kuhn's termination of her employment on March 18, 2004 when she did not return from a leave

of absence due to an illness.

       Presently before this Court for disposition is a motion for summary judgment, submitted

by the Plaintiff.  She seeks judgment in her favor on her FMLA interference claims.  For the

reasons that follow, the motion should be denied.

       Facts

       Plaintiff was born on November 30, 1931.  (Compl. ¶ 4; Answer ¶ 4.)  She was hired by

Kuhn's in February, 2002 as a deli clerk, and her jobs included preparing deli products, salads and sandwiches, cutting and wrapping meats and cheeses and cleaning case in which products were stored.  (Compl. ¶ 8; Answer ¶ 8.)  She worked at Kuhn's Store No. 5, on McKnight Road. (Zema Dep. at 65.)[1]

Kuhn's notes that, at the time she was hired, Plaintiff received an Employee Manual. (Def.'s Resp. Pl.'s Statement Undisputed Facts Ex. 4.)[2]  The Manual provides Kuhn's employees with two separate programs related to absences from work: a Leave of Absence ("sick leave") policy and an FMLA policy.  (Zema Dep. at 61.)  The Leave of Absence policy states that: "Regular part-time employees, upon written request, may in the sole discretion of the Employer, be granted a non-paid leave of absence no to exceed ninety (90) days.  Leave of absence will not be granted for the purpose of trying out another job."  (Def.'s Resp. Ex. 2 at 12.)  Thus, the policy provides for up to 90 days of unpaid leave at the employer's discretion.  (Dentici Dep. at 29.)[3]  The Employee Manual also informs employees that they are to call in if they cannot be at work on a scheduled work date.  (Def.'s Resp. Ex. 2 at 24.)

The FMLA policy provides that employees who have at least one year of continuous service and who have worked for at least 1250 hours during the preceding twelve-month period are eligible to receive up to twelve weeks of unpaid leave for the birth of a child, adoption, placement of a foster child, to care for a sick spouse, child or parent who has a serious health condition or for a serious health condition that renders the employee unable to perform the basic

---

[1]     Pl.'s Mot. (Docket No. 14) Ex. 5.

[2]     Docket No. 18.

[3]     Docket No. 14 Ex. 4.

functions of his or her job.  The policy indicates that eligible employees are required first to utilize any paid leave (vacations, etc.) and that they should submit a written request to the Store Manager at least thirty days prior to the beginning of the leave, if possible, or otherwise as soon as possible when the reason for the leave is unexpected.  (Def.'s Resp. Ex. 2 at 12-13.)

On December 17, 2003, Plaintiff contacted her supervisor, Frank Dentici, and told him that she was "sick" and needed time off.  Dentici granted her request and did not require her to submit any documentation.  (Dentici Dep. at 28-29; Pl.'s Mot. Ex. 2.)[4]

According to Dentici, Plaintiff called again in late December to state that she would be returning to work the first week of January, 2004.  (Dentici Dep. at 30.)  However, she called in early January to state that she was still "sick" and could not return until the end of February after a doctor's appointment.  (Dentici Dep. at 32-33.)  Dentici granted this leave as requested and did not require her to provide any documentation.  Plaintiff did not return in February and did not communicate with Kuhn's to request further leave.

On March 18, 2004, Kuhn's sent Plaintiff a notice of her termination, noting that she last worked on December 17, 2003 and marking her as a "voluntary quit" for the reason that she "failed to return from leave of absence."  (Pl.'s Mot. Ex. 1.)  Jodi Zema, Kuhn's personnel director, stated that, when Plaintiff did not return at the end of February, as she had said she would, she was considered a voluntary quit.  (Zema Dep. at 66-67.)

On March 30, 2004, Plaintiff wrote a letter stating that "I have been unable to return to work" and inquiring solely as to whether she was eligible for vacation pay.  (Pl.'s Mot. Ex. 2.)  In

---

[4]      Plaintiff cites Dentici's deposition at page 18 and Defendant cites page 20.  However, Exhibit 4 to Plaintiff's motion (to which both parties refer) contains only pages 28-42 of Dentici's deposition.

a letter dated April 7, 2004, Zema responded as follows:

> In accordance with the Kuhn's Employee Manual, you would have been eligible for one week paid vacation after January 1, 2004. Unfortunately, you voluntarily quit your employment on December 17, 2003, before your vacation time accrued.
>
> I apologize for any misunderstanding.

(Pl.'s Mot. Ex. 6.)

Plaintiff responded with a letter the next day, in which she stated as follows:

> Please be advised, I have not voluntarily quit my employment with Kuhns. I am off due to illness to [sic] which I was hospitalized. However, I have every intention of returning to work, once my doctors have released me. Prior to my hospitalization, I inquired with my Supervisor if I qualified for vacation in accordance with the Kuhn's Employee Manual. At that time I was informed by my Supervisor that I did qualify for vacation under Kuhn's Employee Manual. To date I have not received my vacation pay. Would you please forward to me my vacation pay for the year 2003. Thanking you in advance.
>
> Sorry for any misunderstanding.

(Pl.'s Mot. Ex. 7.)  Plaintiff wrote another letter to her Store Supervisor on April 18, 2004, in

which she explained for the first time that she had osteoporosis:

> I am a seventy two (72) year old women [sic] and the osteoporosis has affected my spine, leaving me unable to move or perform normal movements, such as walking or even sitting up.  And for that reason this request for leave was unexpected.  Through treatment and medication, it is now possible for me to request my twelve (12) weeks of unpaid leave in accordance with the Family Medical Leave Policy as outlined in the Kuhn's Employee Manual and the Family and Medical Leave Act of 1990 ("FMLA").
>
> However, as stated in the Manual eligible employees are required first to utilize any paid leave (vacation etc.), and this request does not extend the period of FMLA Leave entitlement.  I am now able to request twelve (12) weeks leave under the Act.  At the time of my illness it was not possible to make this request in writing due to the above reasons.  To date I have not received my vacation pay to which I have been requesting.
>
> At the time of my unexpected illness I followed the lines of authority as outlined

4

in the manual regarding my illness and due to the seriousness of the disease I was unable to predict the extent of time I would be off.  Attached is a copy of two (2) pay stubs that was provided to me by Frank Dentici.  He gave them to my daughter during my illness.  They show that I accrued enough hours to qualify me for vacation pay.  I not only accrued enough hours prior to my illness for vacation pay but, I also accrued enough hours to qualify for the [FMLA] Policy as outlined in the Kuhn's Employee Manual and the ... Act.

Again, at that time, Frank Dentici informed me that I qualified for vacation pay in accordance with the Manual.  If I do not received [sic] my vacation pay within two (2) weeks from the date of this letter, you leave me no alternative but to take further action in this matter.  I look forward to hearing from you.

(Def.'s Resp. Ex. 3.)

On April 27, 2004, Zema sent Plaintiff a letter stating as follows:

I sympathize with your condition.  However, it is inappropriate for you to submit your written request for family medical leave 18 weeks after your last day of work.

Following your last day of work on December 17, 2003, you contacted your supervisor, Mr. Frank Dentici, and told him of your illness.  You informed Mr. Dentici that you would need time off due to illness, and Mr. Dentici granted your request.  On Friday, December 26, 2003, you contacted Mr. Dentici and told him to put you back on the schedule for the week ending January 4, 2004, as you were able to return to work.  He put you back on the schedule, but you called off, stating that you were still sick and unable to return.  You then told Mr. Dentici that you would be back by the end of February, following your next scheduled doctor's appointment.  That was the last time that Mr. Dentici heard from you.  By March 17, 2004, ninety days had passed since your last day of work.  You made no attempt to contact Mr. Dentici and request an extension of your leave.  By failing to return from your leave of absence, you voluntarily quit your employment with Kuhn's Market.

In accordance with the Employee Manual, on January 1st of each year, the hours and hire dates of all Kuhn's Market employees are reviewed to determine if they are eligible for vacation pay in the current year.  According to your hours and seniority in 2003, you were not yet eligible for 2003 vacation pay.  Had you worked in 2004, you would have been eligible to receive vacation pay in 2004.  However, you did not.  You are not eligible to receive 2004 vacation pay.

If you have any further questions, this is to advise that under the Employee Manual you should raise them with the McKnight Store Council Member.

5

(Pl.'s Mot. Ex. 2.)  Zema reiterated at her deposition that, because Plaintiff had not returned to work and had not called in to explain the situation, Kuhn's deemed her as having voluntarily quit as of the last day she actually worked, which was December 17, 2003.  (Zema Dep. at 86-87.)

Procedural History

Plaintiff filed a charge asserting age and disability discrimination with the Equal Employment Opportunity Commission and received a Right to Sue letter dated January 19, 2005. (Compl. ¶ 40; Answer ¶ 40.)  She filed this action on April 19, 2005.  In Count I, she alleges that Kuhn's terminated her employment and created a hostile working environment based upon her age, in violation of the ADEA.  In Count II, she alleges that Kuhn's terminated her because she was disabled, regarded as disabled or had a record of disability and that it failed to accommodate her disability, in violation of the ADA.  In Count III, she alleges that Kuhn's failed to follow Department of Labor FMLA regulations for providing notice to employees, for obtaining verification of a serious medical condition and informing her of the appropriate return to work certifications and that it terminated her in violation of the FMLA

On June 16, 2006, Plaintiff filed a motion for summary judgment.  She seeks summary judgment only with respect to the FMLA claim in Count III.

Standard of Review

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Woodside v. School Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001) (quoting Foehl v. United States, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted)).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor.  Doe v. County of Centre, PA, 242 F.3d 437, 446 (3d Cir. 2001); Woodside, 248 F.3d at 130; Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999).

While the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'–that is, pointing out to the District Court–that there is an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

FMLA Claims

The FMLA was enacted in 1993 for two purposes: to "balance the demands of the workplace with the needs of families" and to "entitle employees to take reasonable leave for medical reasons."  29 U.S.C. § 2601(b)(1-2).  The Act grants to an "eligible employee," among other things, the right to twelve workweeks of leave, over any period of twelve months, if she suffers from a "serious medical condition that makes [her] unable to perform the functions of [her] position...."  29 U.S.C. § 2612(a)(1)(D).  The leave may be taken intermittently or by reduced schedule when medically necessary.  29 U.S.C. § 2612(b)(1).

As defined by the Act, a "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29

U.S.C. § 2611(11).  Regulations promulgated by the Secretary of Labor in turn provide a

definition of "continuing treatment by a health care provider" that includes, in relevant part:

> A period of *incapacity* (*i.e.*, inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> > (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or
> >
> > (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i).

The FMLA further provides that:

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave–
>
> > (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
> >
> > (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1).  However, once the twelve-week period ends, an employee who remains

"unable to perform an essential function of the position because of a physical or mental condition

... has no right to restoration to another position under the FMLA."  29 C.F.R. § 825.214(b).  See

Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002).

The Act contains two relatively distinct types of provisions: a series of prescriptive

substantive rights for eligible employees, often referred to as the "entitlement" or "interference"

provisions which set floors for employer conduct, 29 U.S.C. §§ 2612, 2614(a)(1); and protection against discrimination based on the exercise of these rights, often referred to as the "discrimination" or "retaliation" provisions, 29 U.S.C. § 2615(a)(1-2); 29 C.F.R. § 825.220(c). Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir.), cert. denied, 126 S.Ct. 389 (2005).  An employee may bring suit to enforce these rights pursuant to section 2617(a) of the Act. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004).  Plaintiff asserts claims only under the interference provisions.

The Court of Appeals for the Third Circuit has held that, "[i]n order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them."  Callison, 430 F.3d at 119.  The court has further explained that:

> Under this theory, the employee need not show that he was treated differently than others.  Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision.  An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.

Id. at 119-20.

The Act defines an "eligible employee" as one who has been employed for at least one year and has worked at least 1,250 hours in the twelve-month period immediately preceding the leave.  29 U.S.C. § 2611(2)(A).  The term employer "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."  29 U.S.C. § 2611(4)(A)(i).  Defendant admits that it meets the statutory definition of employer and that Plaintiff was eligible for FMLA coverage. (Zema Dep. at 16; Pl.'s  Mot. Ex. 1; Def.'s

9

Resp. ¶¶ 18-19.)

Plaintiff asserts that she has "serious health conditions" for purposes of the FMLA, specifically osteoporosis and chronic obstructive pulmonary disease.  She states that she was hospitalized at Allegheny General Hospital with follow-up consultation by Dr. Veynovich on February 7, 2004.  (Pl.'s Mot. Ex. 8.)  Following that, in order to improve her stability secondary to osteoporosis, she continued with rehabilitation at the Wexford House from February 18, 2004 through March 19, 2004.  (Pl.'s Mot. Ex. 9.)

Kuhn's argues that: 1) Plaintiff's leave was pursuant to its sick leave policy, not its FMLA policy, and she was accorded all rights that she requested; 2) even if this case involved the FMLA, Kuhn's committed no violation thereunder, as it posted a notice explaining the Act's provisions and provided Plaintiff with an employee handbook describing its leave policies, which are consistent with the Act; 3) Plaintiff, by contrast, failed to follow the FMLA when she told her supervisor only that she was "sick" and did not put Kuhn's on notice that she was invoking her rights under the Act until after she was notified that Kuhn's considered her actions as meaning that she had voluntarily quit and that she was not entitled to vacation pay; 4) Plaintiff has proffered no evidence that she suffered any prejudice as a result of any act or omission on the part of Kuhn's as she was unable to return to work after her leave expired and she has given no indication of ever returning to work by any date to the present; 5) she cannot receive "liquidated damages" because she has not lost any wages, she received the amount of leave required by the FMLA and Kuhn's acted in good faith; 6) the Employee Manual contains a grievance procedure but Plaintiff did not utilize it; and 7) she cannot maintain a claim for any harm occurring due to some alleged technical violation of the FMLA when she has never stated that she is ready or

wants to return to work.[5]

Whether the FMLA Applies

Kuhn's first argues that the FMLA is not relevant to this case because Plaintiff requested and was granted leave under its alternative sick leave policy. Jodi Zema stated that Kuhn's concluded that Plaintiff had requested sick leave, not FMLA leave, at least until April 18, 2004. (Zema Dep. at 75, 95-96.)

The FMLA states that the Act "shall not be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements of this Act...." 29 U.S.C. § 2653. However, Kuhn's has not demonstrated that its sick leave policy is more generous than the requirements of the FMLA.

First, its policy provides almost exactly the same amount of leave as the FMLA requires (90 days instead of twelve weeks), but it is discretionary rather than mandatory. Thus, under the Kuhn's sick policy, nothing would prevent Kuhn's from denying an employee's request for leave and terminating that employee if he or she did not return to work immediately. Moreover, Kuhn's policy does not indicate that the leave may be taken intermittently or on a reduced schedule and it says nothing about an employee's right to reinstatement following the leave.

The FMLA provides that "the rights established for employees under this Act ... shall not be diminished by any collective bargaining agreement, or any employment benefit program or plan." 29 U.S.C. § 2652(b). Thus, to the extent that Kuhn's sick leave policy provides anything less than the FMLA requires, the FMLA controls. See Callison, 430 F.3d at 121.

---

[5]      Because the Court should deny Plaintiff's motion based on argument Nos. 2-4 and 7, the Court need not reach argument Nos. 5-6.

The Actions of Kuhn's and Plaintiff Under the FMLA

Having determined that the FMLA could apply to this case, the Court must determine whether Kuhn's and Plaintiff fulfilled their obligations thereunder.  Kuhn's contends that it met all of its obligations by posting notices at the workplace and providing information in the Employee Manual.  29 U.S.C. § 2619(a); 29 C.F.R. §§ 825.300(a), 825.301(a), pt. 825 App. C. (Zema Dep. at 27; Dentici Dep. at 39; Def.'s Resp. Exs. 1, 2 at 12-13, 4.)

Plaintiff does not dispute these assertions.  However, she argues that Kuhn's failed to provide FMLA information to her when she requested leave.  The Act also requires employers to provide written notice to employees "within a reasonable time after notice of the need for leave is given by the employee–within one or two business days if feasible.  If leave has already begun, the notice should be mailed to the employee's address of record."  29 C.F.R. § 825.301(c).  Such notice shall include, among other things, whether "the leave will be counted against the employee's annual FMLA leave entitlement," "any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so," "any requirement for the employee to present a fitness-for-duty certificate to be restored to employment," and "the employee's right to restoration to the same or an equivalent job upon return from leave."  29 C.F.R. § 825.301(b)(1)(i, ii, v, vii).  "Thus, the written notice is in addition to any employer handbook."  Wilson v. Lemington Home for the Aged, 159 F. Supp. 2d 186, 194 (W.D. Pa. 2001).

The Act also states that:

> If an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice.

29 C.F.R. § 825.301(f).

Plaintiff argues that Kuhn's failed to provide her with notice of her FMLA rights and that such failure, in and of itself, constitutes an interference with her FMLA rights.  She cites <u>Wilson v. Lemington Home for the Aged</u>, 159 F. Supp. 2d 186 (W.D. Pa. 2001).  In that case, the plaintiff (Marva Wilson) worked as the assistant director of nursing at a nursing home (Lemington).  After being forced to work three consecutive shifts, she became physically and mentally exhausted.  She took a personal day on December 9, 1997, then called in the next day to tell her supervisor (L. Parker Hall) that her condition had regressed and she was suffering not only from diarrhea but also from vomiting and chest pain.  On December 11, Dr. Maryellen Schroeder diagnosed clinical depression and prescribed Prozac and counseling and advised Wilson to take a medical leave of absence from work until January 11, 1998.  Wilson reported her need for leave to Hall, but did not give her exact diagnosis or mention that she was taking this leave pursuant to the FMLA.

On December 19, 1997, the director of human resources (Kevin Jordan) called Wilson and requested that she provide a medical certificate.  Jordan called again on December 26, and Wilson told him that Dr. Schroeder was out of the office and would not return until December 30.  On December 30, Dr. Schroeder wrote a letter informing Jordan that Wilson needed to take a medical leave of absence until January 11, 1998.

However, on December 29, 1997, Lemington terminated Wilson's employment based on her failure to provide the medical certification by December 26.  The letter of termination informed her that Lemington's FMLA policy required employees to supply a medical certification within fifteen days of the date Lemington requested it.

13

Lemington argued that Wilson's December 11, 1997 telephone conversation was insufficient to put it on notice that she was requesting FMLA leave.  Judge Ambrose rejected this argument because, in the termination letter, Hall told Wilson that, during that very phone conversation, she had instructed Wilson to provide a medical certification within 15 days, or by the close of business on December 26.  In other words, if Lemington had enough information to ask for a medical certification, then it had enough information to be on notice that Wilson was requesting FMLA leave.  Id. at 192.  Judge Ambrose further held that Lemington could not deem Wilson to have voluntarily quit her employment for failing to comply with its FMLA policy when the record was undisputed that Lemington did not provide Wilson with any written notification at the time of her request detailing its specific expectations or explaining any consequences of a failure to meet these obligations.  Id. at 193-94.

Plaintiff argues that Kuhn's FMLA policy states that an employee seeking leave should submit a written letter and is required to use vacation time prior to the beginning of the leave period.  (Pl.'s Mot. Ex. 3.)  She notes that Dentici admitted that another employee had been approved for FMLA leave without submitting anything, including a doctor's certification, in writing.  (Dentici Dep. at 40-41.)  She also notes that Jodi Zema admitted that the company's FMLA policy in general does not advise employees that they need to provide medical certification for FMLA leave or that they need to provide a return-to-work fitness for duty slip from their doctor to return after FMLA leave.  (Zema Dep. at 114.)  Zema further stated that Kuhn's FMLA policy requires an employee to put a request for leave in writing, estimate the date of return and provide medical proof of the condition.  The written request would be given to the employee's supervisor and transferred to the corporate office upon approval.  Near the end of the

FMLA period, Kuhn's corporate office would contact the employee to notify her that the FMLA period was about to expire and it would be the employee's responsibility to return to work or request more leave under a separate company policy. (Zema Dep. at 50, 76-80.) Zema stated that one of her responsibilities as personnel director is to ensure that notice is given to the employee, by letter or by telephone, with respect to the expiration of FMLA leave. (Zema Dep. at 58.)

However, there is no evidence that Kuhn's requested that Plaintiff provide a medical certification or that it took any action against her because she failed to do so. Rather, the evidence demonstrates only that Plaintiff stated that she was "sick" (which, as explained below, has been held insufficient to put an employer on notice that an employee is requesting FMLA leave) and that Frank Dentici granted her request for leave without requesting any medical certification.

Relatedly, Kuhn's did not terminate Plaintiff's employment because she did not comply with an aspect of Kuhn's FMLA policy that it failed to notify her about. Rather, it considered her as having voluntarily quit because she did not return to work when she said she would and made no request for additional leave.

In addition, Lemington terminated Wilson's employment during her FMLA leave period, but Kuhn's did not take any action until after Plaintiff's FMLA leave would have expired. As explained below, this distinction is crucial in that Plaintiff is unable to demonstrate how she was prejudiced even if Kuhn's failed to comply with the FMLA. Thus, the Wilson case is distinguishable from this case and is not instructive with respect to the issues raised herein.

Adequate Notice to Employer

An employee provides adequate notice of the need for FMLA leave to the employer by stating a "qualifying reason for the needed leave."  29 C.F.R. § 825.208(a)(2).  After the employee provides the requisite notice, it becomes incumbent upon the employer "to designate leave, paid or unpaid, as FMLA-qualifying."  29 C.F.R. § 825.208(a).  If "the employer does not have sufficient information about the reason for an employee's use of paid leave, the employer should inquire further of the employee" as necessary to designate the leave, id., and may "obtain any additional required information through informal means."  29 C.F.R. § 825.303(b).

"If the required notice is not given, however, the employer can deny leave even if the employee has a serious health condition."  Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311 (7th Cir. 2006) (citation omitted).  An employee is not required to "expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed."  29 C.F.R. § 825.303(b).  Employers, however, are entitled to the sort of notice that will inform them that the FMLA may apply.  For leave to be FMLA-qualifying, it must result from a "serious health condition."  An employee's absence for a period of time alone does not establish adequate notice of a serious health condition.  Nor can the employee, in subsequent litigation, refer to evidence that was not provided to the employer within the statutory time period.  Notice must be provided "as soon as practicable under the facts and circumstances of the particular case," which means "within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible."  29 C.F.R. § 825.303(a).  Notice may be provided by the employee herself, or by a "spokesperson" if the employee is unable to do so, "either in person, or by telephone, telegraph, facsimile ... machine or other electronic means."

16

29 C.F.R. § 825.303(b).

Plaintiff contends that her situation presented extraordinary circumstances as described in the regulation.  However, as Kuhn's notes, she called on three occasions (December 17, 2003, December 26, 2003 and during the first week of January 2004) and sent two letters (March 30, 2004 and April 8, 2004), but provided no information about her condition in any of these communications.  Thus, the evidence demonstrates that she was able to communicate with her employer but did not provide notice that she had a serious medical condition.  As noted above, the notice does not have to be put in writing.

Her initial call to Dentici, in which she stated that she was "sick," also was insufficient. "An employee's reference to being 'sick' ... does not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable." Phillips, 450 F.3d at 312 (quoting Collins v. NTN-Bower Corp., 272 F.3d 1006, 1009 (7th Cir. 2001)).  See also Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 981 (5th Cir. 1998) (employee calling in to say she would not be in "that day" because she was "having a lot of pain in her side" and was "sick" was insufficient); Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997) (employee's husband calling employer to say only that she was in the hospital for some tests was insufficient); Carter v. Ford Motor Co., 121 F.3d 1146, 1148 (8th Cir. 1997) (wife calling in to say husband was "sick" was insufficient).

Lack of Prejudice

Kuhn's also argues that, even if it committed a technical violation of the FMLA, Plaintiff has failed to demonstrate that she suffered prejudice thereby because she was unable to return to work within the statutory framework.  Without demonstrating the existence of prejudice, Kuhn's

17

argues, Plaintiff could not recover even for any alleged violation of the Act.

Once an employee demonstrates that her employer violated the Act, "§ 2617 provides no relief unless the employee has been prejudiced by the violation." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (citations omitted).  The employer is liable for compensation and benefits lost "by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation, § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).  In Ragsdale, the Supreme Court held that a regulation issued by the Secretary of Labor was contrary to the Act because it provided for a cause of action and damages when an employer committed a technical violation of the Act (failure to notify the employee that the leave would count as FMLA leave) but nevertheless provided the employee with all the leave that the Act required.

In Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004), a mechanic who was under a Last Chance Agreement (LCA) called his employer (PSE & G) on December 6, 1999 to say that he had been in an auto accident and would need to be off work for two weeks to recover.  He then met with an orthopedic surgeon, who diagnosed him with torn rotator cuffs and recommended immediate surgery.  On December 17, 1999, Conoshenti sent PSE & G a form indicating his diagnosis and that he would be unable to work until approximately April 2000.  But on December 20, 1999, PSE & G began steps to terminate Conoshenti's employment for having violated the LCA.  The letter of termination was not sent after Conoshenti sent a letter to his supervisor specifically requesting leave under the FMLA and PSE & G concluded that it could not terminate him in this situation.

On March 28, 2000, Conoshenti's doctor approved his return to work for "desk duty" as

18

of April 3, 2000.  He informed PSE & G, but was told that the facility where he worked could not accommodate desk duty and that his return to work would have to be delayed until his doctor cleared him for full manual labor.  Shortly thereafter, his doctor approved his return to full duty and Conoshenti reported for work on April 17, 2000.  However, on April 12, 2000, PSE & G had reinitiated administrative steps to end his employment for violating the LCA and when Conoshenti reported for work, he was fired.

PSE & G never notified Conoshenti of his rights under the FMLA.  The Court of Appeals stated that "Conoshenti will show an interference with his right to leave under the FMLA, within the meaning of 29 U.S.C. § 2615(a), if he is able to establish that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury."  Id. at 143.  Conoshenti filed a motion for summary judgment and the district court denied it.  The Court of Appeals affirmed, holding that the summary judgment record contained "no competent evidence regarding the alternatives that would have been available to Conoshenti had PSE & G advised him of his rights when he requested leave on December 6th.  Only Conoshenti's brief contains a statement of what he would have done had he been advised of his rights."  Id. (footnote omitted).[6]

In this case, Plaintiff has not even articulated in her brief what she would have done had she been advised of her FMLA rights.  Thus, for the reasons articulated in Conoshenti, she has

───────────────────────

[6]     The Court of Appeals reversed the district court's holding that PSE & G's motion for summary judgment should be granted, noting that PSE & G never asserted that Conoshenti could not meet his burden of proving that he would have structured his leave differently, nor did it argue that a showing a prejudice was an essential element of Conoshenti's claim or that such a showing was material in any way.  Id. at 146.  In this case, Kuhn's has not moved for summary judgment, although it has made the arguments that PSE & G did not.

failed to demonstrate that she suffered prejudice as a result of the alleged failure of Kuhn's to comply with FMLA notice requirements and her motion for summary judgment should be denied.

<u>Inability to Return to Work</u>

Kuhn's also argues that because Plaintiff was unable to return to work at the end of what would have been her FMLA leave, she would be entitled to no remedy in any event.  The Court of Appeals for the Sixth Circuit has held that an employee who is unable to return to work in twelve weeks has no remedy under the FMLA even if the employer committed a violation of the Act.  <u>Cehrs v. Northeast Ohio Alzheimer's Research Ctr.</u>, 155 F.3d 775, 784-85 (6th Cir. 1998). Recently, the court held that, in an entitlement claim, the employer may raise this defense and back it up with medical evidence, even if that evidence only became available after the employer terminated the employee.  <u>Edgar v. JAC Products, Inc.</u>, 443 F.3d 501 (6th Cir. 2006).

The evidence in this case supports only one conclusion: Plaintiff was not able to return to work twelve weeks after the time she first took leave.  She points to the letter in which she states that she had "every intention [of] returning to work, once my doctors have released me."  (Pl.'s Mot. Ex. 7.)  However, the letter is dated April 8, 2004, after her twelve weeks of leave would have expired and it demonstrates that she had not yet been released to work as of that date. Moreover, Kuhn's states that Plaintiff has never established the capability to return to work as of any date and has never requested to return to work.  (Zema Dep. at 97-101.)  Plaintiff has provided no evidence to the contrary.  Her April 18, 2004 letter made a request for FMLA leave

(too late, because she had already been off for more than twelve weeks)[7] and it therefore indicates that she was unable to return to work as of that date.  Thus, even if Kuhn's committed a violation of the FMLA, Plaintiff has presented no evidence that she suffered prejudice as a result.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of the plaintiff (Docket No. 14) be denied.

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: August 18, 2006

---

[7]	The FMLA affords a remedy only to eligible employees.  29 U.S.C. § 2612(a).  On April 18, 2004, Plaintiff was not an eligible employee because she had been terminated one month earlier, after she had utilized the full amount of leave the FMLA requires.  Thus, she could not request FMLA leave on that date.  See Brohm v. JH Properties, Inc., 149 F.3d 517, 523 (6th Cir. 1998).